IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA )
                         )
v.                       ) 1:12cr361 (LMB)
                         ) 1:13cv1271 (LMB)
DARRYL JAROD MAGWOOD      )
                         )
            Defendant.    )

MEMORANDUM OPINION

Darryl Jarod Magwood ("Magwood" or "movant") acting pro se
has filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside,
or Correct Sentence By a Person in Federal Custody ("§ 2255
Motion"), in which he argues that he received constitutionally
ineffective assistance from his defense counsel, Jonathan Simms,
("Simms"), in connection with his decision to reject a
government offer of a plea agreement and go to trial. He also
alleges that counsel coerced him into waiving a trial by jury,
and failed to file a Rule 29 or 33 motion to dismiss the
conviction for possession of a firearm in furtherance of a drug
transaction. For relief he asks the Court to "vacate and remand
for re-sentencing on plea offer, without AUSA responding or
order an evidentiary hearing." § 2255 Motion at 11. At no
point in his motion does Magwood allege he is innocent of the
offenses for which he was convicted. Because the § 2255 Motion
lacks merit on its face, neither a response from the government

nor an evidentiary hearing is required, and the § 2255 Motion will be summarily dismissed.[1]

## I.   PROCEDURAL BACKGROUND

On August 9, 2012, Magwood was indicted along with co-defendant Jawan Ronell Halton with one count of conspiracy to distribute 28 grams or more of cocaine base in violation of 21 U.S.C. §§ 846 and 841(a)(1) and possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c).

The case was originally scheduled as a jury trial to start on Monday, October 9, 2012; however, on Wednesday, October 5, 2012, defense counsel filed a motion indicating that the defendant and the United States were waiving the jury, and on the morning of trial Magwood signed a jury waiver.  Before accepting the waiver, the Court conducted a colloquy with Magwood to determine whether he had entered the waiver voluntarily and knowingly.  During that colloquy Magwood admitted that he had been discussing the waiver with his counsel and was acting voluntarily:

---

[1] Under Rule 4(b) of the Rules Governing Section 2255 Proceedings,

> The judge who receives the motion must promptly examine it.  If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party.

THE COURT:   . . . Before we get started, Mr. Magwood, I want you to go up to the lectern.   Mr. Magwood, I understand that this morning you signed the waiver of trial by jury form.  Is that correct?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Had you discussed before today the possibility of having this case tried without a jury?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  All right.  And I assume that you discussed this decision carefully with Mr. Simms?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Has anybody put any force or pressure on you to waive your right to a trial by jury?

THE DEFENDANT:  No, Your Honor.

THE COURT:  And do you understand that with a jury trial, we would have 12 people ultimately chosen to hear your case, and in order for a jury to make a decision, it would -- the jury would have to be unanimous?  That means all 12 jurors have to agree with the decision, so if just one juror had a reasonable doubt, that jury would be what we call a hung jury, it could not result in any decision, and we would have to have a new trial.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Was all of that basically explained to you by Mr. Simms?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And is it your wish today to go forward with this case without a jury?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Have you been promised anything or told that you would get a lighter sentence or more favorable treatment by the Court if you waived your right to trial by jury?

THE DEFENDANT:  No, Your Honor.

THE COURT:  All right.  And, Mr. Simms, did you carefully go over this waiver with your client?

MR. SIMMS:  Yes, I did, Your Honor.

THE COURT:  Are you satisfied that Mr. Magwood is entering the waiver in a knowing and voluntary fashion?

MR. SIMMS:  I am.

THE COURT:  Are you aware of any outside influences that might have affected his choice in this matter?

3

> MR. SIMMS:  No, Your Honor.
> THE COURT:  All right, based on these answers to
> the Court's questions, I'm finding this is a knowing
> and voluntary waiver of trial by jury.  We'll go ahead
> then and conduct this as a bench trial.

Tr. at 4-6.

After finding that Magwood had knowingly and voluntarily
waived his right to a jury trial, but before the bench trial
began, the prosecutor alerted the Court to a plea offer the
government had extended to Magwood on the previous Friday
evening.  Under the proposed plea agreement Magwood would plead
guilty to conspiracy to distribute 28 or more grams of cocaine
base (Count 1) and the government would move to dismiss the
firearm charge (Count 2).  Because Count 2 carried a mandatory
minimum sentence of five years imprisonment, which had to run
consecutive to any sentence for Count 1, which also had a five
year mandatory minimum, the proposed plea significantly reduced
Magwood's potential mandatory minimum sentence from 120 months
to 60 months.

Upon hearing the description of the proposed plea, the
Court asked Simms whether he had fully explained to Magwood the
risks involved in rejecting the plea offer and going to trial:

> I assume that Mr. Magwood understands and that you've
> explained to him that the risk he faces in going to
> trial is that if he is found guilty of both Count 1
> and the gun count [Count 2], the gun count carries a
> five-year mandatory consecutive sentence, which means
> the minimum amount of time he would serve would be ten
> years if he's found guilty of both charges.
> MR. SIMMS:  I did explain that to him, Your
> Honor.

4

THE COURT:   Mr. Magwood, do you understand the
difference here?   Do you understand the difference
between the plea offer that was made to you on Friday
and what could happen to you if you go to trial?
        THE DEFENDANT:  Yes, Your Honor.

Tr. at 9-10.

The Court then asked Magwood if he had had enough time to
discuss the decision whether to accept the plea offer or go to
trial.  Magwood explained that because the plea agreement had
been offered over the weekend he had not had enough time to
fully consider the offer, although he conceded that he "was
aware of the circumstances."  The Court offered to take a brief
recess to allow him more time to think about his decision, which
offer Magwood accepted.  The transcript reflects that the recess
lasted from 10:07 to 10:56 a.m.  Id. at 11.

After the 50-minute recess, the proceedings were reopened
when a written plea agreement signed by the movant was
presented.  The Court began the colloquy required under Fed. R.
Crim. P. 11 by having Magwood affirm that he would answer the
questions truthfully and acknowledge that he faced perjury
charges if he lied in answering any question.  He then stated
that he was 26 years old, had completed the eleventh grade, had
no problem reading, writing, or understanding English, and was
not under the influence of alcohol or drugs.  Id. at 13, 15.  He
also acknowledged that he had enough time to read the plea
agreement; that he had asked his attorney all the questions he
had about the plea agreement; and that counsel had answered all

5

of his questions to his satisfaction.  Id. at 16.  Magwood was

not reluctant about asking questions during the plea colloquy.

For example, when asked whether he wanted to ask the Court any

questions about the plea agreement, he raised questions about

his eligibility for a downward departure at sentencing under the

safety valve.[1]  Magwood also admitted that he told Simms

everything he knew about the case, that Simms had discussed the

nature of the conspiracy charge, and that he was fully satisfied

with the way in which Simms had been working on the case.  Id.

at 32-33.

    After advising Magwood about the rights he would give up by

pleading guilty, the Court began to discuss the written

Statement of Facts, which Magwood admitted having read and

signed.  Id. at 37.  When the Court explained to Magwood that by

signing the Statement of Facts he was admitting the truth of

what was contained in the eleven numbered paragraphs and that he

was acknowledging that the government could have proven those

facts beyond a reasonable doubt, Magwood asked to address the

Court.  Before Magwood said anything, his counsel asked to

consult with him, and after a brief discussion, counsel

announced that Magwood wanted to go to trial.  Tr. at 37-38.  In

---

[1]  In response to that question, the Court explained that if a
defendant had more than one misdemeanor on his record, he would
not be safety valve eligible.  Magwood admitted having three or
four misdemeanor convictions, some of which involved drug
offenses.  Simms told the Court that he had advised Magwood that
his record disqualified him from being safety valve eligible and
Magwood acknowledged that he understood.  Tr. at 19.

response to that statement the Court warned Magwood about the

consequences of rejecting the plea agreement, to which he

responded that he understood:

> THE COURT:  This has really wasted a lot of time this
> morning.  I'm not going to try to force the defendant into
> the plea, but I want to make sure you understand this is
> the last time you can change your mind.
> THE DEFENDNAT:  Yes, Your Honor. I do.
> THE COURT:  And, you know, the government's got a
> right to use this written statement against you.  Why did
> you sign the statement of facts if you don't agree with it?
> THE DEFENDANT:  From the defense, Your Honor, that you
> just expressed to me that the government has to prove
> beyond a reasonable doubt is not what me and my attorney
> went over.  From my understanding, that wasn't what had to
> be portrayed today at trial.
> THE COURT:  Mr. Simms, can you articulate for me a bit
> better your client's understanding of the burden of proof?
> I assume you went over the burden of proof with your
> client.
> MR. SIMMS:  We did discuss reasonable doubt, Your
> Honor, that it's always the government's burden.  Your
> Honor, he is a little confused in regards to what the
> government would have to prove to show conspiracy and the
> evidence that they do have.
> We discussed the pieces of evidence that they have
> against him, but he is confident in rebuttal evidence we
> can present in regards to evidence that the government will
> produce.
> THE COURT:  All right.  Now, both charges are going to
> go forward.
> THE DEFENDANT:  I understand.
> THE COURT:  So the gun count is back in this case.
> THE DEFENDANT:  I understand.

Id. at 37-39.

The bench trial started immediately and Magwood was found

guilty as to both charges.  At the sentencing hearing on January

11, 2013, the Court accepted the guideline calculations in the

Presentence Report ("PSR"), which found an offense level 34, a

7

criminal history IV, and a resulting advisory guideline range for Count 1 of 210 to 262 months incarceration.[2]  The government allocuted for a within-guideline sentence of 270 months (consisting of 210 months on Count 1 and 60 months consecutive on Count 2).  Defense counsel argued for a total sentence of 120 months (consisting of the statutory mandatory minimum for each count).  Id. at 13-16.  The Court gave the defendant a significant variant sentence of 150 months (consisting of 90 months on Count 1 and 60 months consecutive on Count 2).

Magwood, through new counsel, appealed his conviction and sentence.  United States v. Magwood, 528 F. App'x 331 (4th Cir. 2013).  Counsel's brief was filed pursuant to Anders v. California, 386 U.S.- 738 (1967) and Magwood filed a pro se supplemental brief.  The issues raised on appeal included challenges to the Court's finding the testimony of Detectives Flich and Christopher credible, while rejecting the credibility of  Magwood's testimony.  Magwood also appealed the sufficiency of the evidence supporting the firearm offense.  That claim was rejected.  Magwood, 528 F. App'x at 332-33.  He also attempted to raise various ineffective assistance of counsel claims,

---

[2] The level 34 took into account a drug quantity of 112 to 196 grams, resulting in a 28 base offense level, increased two points for a leadership role.  The offense level was further increased four levels for obstruction of justice for falsely testifying at trial and for fleeing into traffic and exposing the arresting officer to substantial risk of death or serious injury from car traffic in the busy intersection under U.S.S.G. § 3C1.2

including that his trial counsel coerced him into signing the statement of facts that accompanied his aborted plea.  The Fourth Circuit declined consideration of those issues.  Id. at 333.  Magwood timely filed the pending § 2255 Motion.

II.  FACTUAL BACKGROUND

On May 18, 2012, a Prince William County detective called Cody Jones, a person from whom he had been buying crack cocaine, to order $200 worth of the drug.  Jones responded by arranging the sale at a McDonald's restaurant in Manassas, Virginia.  When the detective met up with Jones, Jones said he was waiting for his supplier.  Detectives saw a blue/green Dodge Charger with dark-tinted windows pull up into an adjacent parking lot and saw a white male, later identified as Benjamin Lacovey ("Lacovey"), exit the Dodge, approach Jones, and hand Jones a plastic bag. Jones immediately returned to the detective's car and handed him the plastic bag, which appeared to contain crack cocaine.

Law enforcement officers began to follow the Dodge Charger along Route 234, seeing it stop several times and watching Lacovey appear to make what looked like hand-to-hand drug transactions.  At 11:30 p.m., police conducted a traffic stop of the car.  Magwood was seated in the right front passenger seat, co-defendant Jawan Ronell Halton ("Halton") was the driver, and Lacovey was in the back.  As the car was being stopped, police noticed Magwood bend down as if placing something under his seat.  After Magwood was told to exit the car, he attempted to

flee, running into oncoming traffic.  Officers chased him into traffic.  After being wrestled to the ground, Magwood resisted being handcuffed, trying to keep his hands under his body by his waist.

After finally subduing, handcuffing, and rolling Magwood over, police found a plastic bag containing 9.739 grams of heroin and 12.904 grams of cocaine immediately under his body, as well as $2,218 in cash in his front pockets.  They also found two plastic baggies containing 24.385 grams of heroin and two plastic bags containing 31.748 grams of crack cocaine on Lacovey's person.  Halton had $2,519 in cash on his person, and $1,190 in cash was found under the driver's side visor.  Under the front passenger seat where Magwood had been sitting, officers found a loaded .40 caliber Taurus semi-automatic pistol.

In a Mirandized post-arrest statement, Magwood admitted possessing the heroin and crack found on his person, but claimed the drugs were for personal use.  He also admitted knowing that Lacovey was selling drugs, and that he had gotten some of the customers for Lacovey; however, during the trial, Magwood testified and denied most of what he told the officers.  Among other statements found incredible by the Court was his claim that all the arresting officers wore masks; that he fled from them because he feared they were robbing him; and that the officers planted the drugs on him.

III.  <u>DISCUSSION</u>

In his § 2255 Motion, Magwood alleges four grounds for relief; however, grounds 1 and 2 are essentially the same in that they both assert that defense counsel was ineffective for "coercing" Magwood into rejecting the government's plea agreement (Claim 1) and for advising Magwood not to plead guilty (Claim 2).  In Claim 3, Magwood complains that counsel was ineffective in advising him to waive a trial by jury.  Lastly, in Claim 4, Magwood alleges that counsel should have filed a post-trial motion under Rules 29 or 33 to raise defects in the firearm conviction, which Magwood alleges was for a non-existent offense.

A.  <u>Standard of Review</u>

A motion under 28 U.S.C. § 2255 provides for collateral attack on a conviction or sentence that was imposed in violation of the United States Constitution or laws; where the court lacked jurisdiction to impose the sentence; where the sentence was in excess of the maximum authorized; or where the sentence or conviction is otherwise subject to collateral attack.  To prevail, a movant bears the burden of proving his grounds for collateral relief by a preponderance of the evidence.  <u>Vanater v. Boles</u>, 377 F.2d 898, 900 (4th Cir. 1967).  Any relief under § 2255 is designed to correct fundamental constitutional, jurisdictional, or other errors, and it is therefore reserved for situations in which denying relief would "inherently

result[] in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979) (quoting Hill v. United States, 368 U.S. 442, 428 (1962)).

Moreover, a motion pursuant to § 2255 "may not do service for an appeal," and claims that were not appealed are deemed waived and, therefore, procedurally defaulted unless the movant can show cause and actual prejudice. United States v. Frady, 456 U.S. 152, 165-67 (1982); United States v. Maybeck, 23 F.3d 888, 891-92 (4th Cir. 1994) (applying the Frady standard to unappealed guilty pleas). An exception applies, however, when a defendant brings a claim of constitutionally ineffective assistance of counsel, which can be raised in a collateral challenge. See United States v. Martinez, 136 F.3d 972, 979 (4th Cir. 1998); United States v. DeFusco, 949 F.2d 114, 120-21 (4th Cir. 1991).

## B.  Ineffective Assistance of Counsel

To sustain his § 2255 Motion based on ineffective assistance of counsel, Magwood must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984), which requires a showing of both deficient performance by counsel and resulting prejudice to the defendant from that deficient performance. Because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence," and because a wide range of legitimate

12

defense strategies are possible in a given case, "scrutiny of counsel's performance must be highly deferential."  Id. at 689. Even were counsel's performance unreasonable, to prevail, a movant must affirmatively "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.

### 1.  Counsel's Advice Concerning the Guilty Plea

In his first two claims, Magwood argues that his counsel coerced him into rejecting the plea agreement and going to trial and that the prejudice he suffered by going to trial was being found guilty of both counts and being sentenced to 150 months' incarceration.

The factual record does not support a finding that Magwood was coerced into anything.  Instead, the record establishes that Magwood simply changed his mind about pleading guilty when the Court began to discuss the facts the government would have to prove to establish guilt.  As the transcript of the plea colloquy shows, after Magwood asked to say something, Simms requested a chance to consult with him.  After that brief consultation, Simms announced that he believed Magwood wanted to proceed to trial.  Magwood did not object to that statement. And in response to that statement, the Court addressed Magwood

directly and explained to him the ramifications of rejecting the plea.  Three times, Magwood responded that he understood that the gun count would be back in the case.  At no point during that exchange did Magwood protest that his counsel had not accurately represented his position, nor did he object to the trial going forward.  Given that Magwood had not been reluctant to ask questions during the aborted plea colloquy, there is no reason to question his willingness to object to counsel's statement if he had disagreed with it.  Moreover, the trial record shows that Magwood fully participated in the trial, including testifying to his version of the facts in an effort to contradict the government's evidence.

Lastly, neither in his allocution during the sentencing hearing, nor in a post-sentencing letter he wrote to the Court, did Magwood protest that his attorney forced or mislead him into rejecting the plea and going to trial.[3]  Because the Court finds no evidence in this record that Simms forced or pressured the defendant into rejecting the plea, the first two claims fail.[4]

---

[3]    Magwood also did not raise these arguments in the Petition for Relief under Federal Rules of Criminal Procedure, Rule 33, in the Interest of Justice [Dkt. No. 128] he filed on his own behalf on July 22, 2013, several months before he filed the pending § 2255 Motion.
[4] The affidavits of Magwood's parents attached to his § 2255 Motion stating simply that Simms told their son not to accept the plea agreement are not persuasive given Magwood's admissions under an affirmation to tell the truth that he had fully discussed his options with Simms.  See Tr. at 37-39.

14

## 2. Jury Waiver

In his third claim Magwood argues that Simms failed to follow his instructions to "push and acquire a trial by jury." Aff. & Mem. of Law in Supp. of the Pet'r's 28 U.S.C. § 225(F)(1) Petition at 10. The record contains no reliable evidence to support that allegation. The affidavits of Magwood's parents are not sufficient to establish that Magwood was coerced into waiving a jury, given that the record shows that Magwood intelligently, knowingly, and voluntarily waived his right to a jury trial. In response to the Court's questions about the jury waiver, Magwood explicitly acknowledged that he had discussed the decision to waive a jury trial with counsel, that no one had forced or pressured him into waiving a jury, and that he had not been promised a lighter sentence or more favorable treatment by the Court if he chose a bench trial over a jury trial. Tr. at 4-6. Regardless of what advice his counsel may have given him regarding the pros and cons of a jury trial, it is clear from that colloquy that Magwood made the decision to waive jury knowingly, voluntarily, and intelligently.

Even if Simms had advised Magwood to waive a jury, such advice is not an uncommon tactical decision, which competent defense counsel may recommend to a defendant who, for example, may want to testify but would expose himself to cross-examination that might be overly prejudicial in the eyes of a

15

jury.  Magwood did testify, and his record was sufficient to justify counsel's advice to waive a jury.  There is on this record no evidence to support a conclusion that counsel's advice fell outside the norm for professional conduct.

Moreover, and most significantly, Magwood cannot show prejudice.  Given the very strong trial evidence, including the testimony of co-defendant Lacovey; the police officers' testimony; Magwood's post-arrest admissions; the discovery of drugs under Magwood's body; the discovery of the gun under his car seat; and the discovery of the cash on his person, there is no reason to believe that a jury would have reached any conclusion other than guilt.  Lastly, the Fourth Circuit's conclusion that the record contained sufficient evidence to support Magwood's convictions is further evidence of the unlikelihood that a jury would have acquitted.   For these reasons, Magwood's claim that counsel was ineffective in relation to Magwood's decision to waive a jury trial fails.

### 3.  The Firearm Conviction

In his last claim, Magwood argues that Simms was ineffective in failing to file motions under Fed. R. Crim. P. 29 and 33, attacking the legality of the conviction under 18 U.S.C. § 924(c)(1)(A) for possessing a firearm in furtherance of a drug

trafficking offense.[5] Specifically, Magwood argues that the Court found him guilty of a non-existent crime, which he describes as possession of a firearm during a drug trafficking offense, rather than possession of a firearm in furtherance of a drug trafficking offense. Magwood relies on United States v. Castano, 543 F.3d 826 (6th Cir. 2008), for his argument that § 924(c) does not include an offense for possession of a firearm during a drug transaction. That description of what constitutes an offense under § 924(c) is correct. The statute does not make possession of a firearm during a drug trafficking offense a crime. Castano involved a jury trial with multiple misstatements of the law in the jury instructions and verdict form, leaving open a genuine concern as to whether the jury had found all the elements necessary for a conviction under § 924(c). Castano, 543 F.3d at 833-37.

In Magwood's case, however, there is no doubt that he was convicted of an actual violation of § 924(c). First, although not as artfully as it should have, the Court did make the finding that Magwood's possession of the firearm was in furtherance of the drug conspiracy when it announced its verdict:

> So I find beyond a reasonable doubt the government has established that the defendant was a member of a conspiracy to distribute 28 grams or more of crack

---

[5] The record reflects that counsel did make an oral motion under Rule 29 and filed a written motion for a new trial under Rule 33, although the specific issues raised in those motions were not the same as the one being argued in this § 2255 Motion.

cocaine, and I also find the defendant was in
possession of a firearm during, in, and related to the
-- in furtherance of the commission of that
conspiracy. He is therefore found guilty of both
counts.

Tr. at 289.

Second, the Judgment Order clearly that the offense in that

Count 2 for which Magwood was found guilty was "possession of a

firearm in furtherance of a drug trafficking offense." See Dkt.

No. 110. And, of most significance, on appeal the Fourth

Circuit clearly found the evidence in the record more than

sufficient to support the § 924(c) conviction, thereby putting

to rest any concern that Magwood was not properly convicted of

an actual offense:

> Magwood constructively possessed the firearm that was
> seized during a traffic stop: the gun was under the
> car's passenger seat where Magwood was seated the
> entire evening; he was seen reaching under the seat
> when the traffic stop began; he was seen with the gun
> earlier that evening; and he had carried that firearm
> during previous drug transactions. Further, it is
> reasonable to infer that the gun was being used in
> furtherance of a drug offense: it was easily
> accessible; it was loaded; and it was in close
> proximity to both drugs and drug profits discovered in
> the car and on Magwood's person.

Magwood, 528 F. App'x at 332-33 (4th Cir. 2013).

For these reasons, his last claim fails.

C.  **Conclusion**

For all of the above stated reasons, there is no need for

an evidentiary hearing because the record clearly establishes

that there is no merit to any of Magwood's claims. Accordingly,

the Motion to Vacate, Set Aside or Correct Sentence by a Person
in Federal Custody Pursuant to 28 U.S.C. § 2255 will be
dismissed by an Order to be issued with this Memorandum Opinion.

Entered this _14th_ day of April, 2014.

Alexandria, Virginia

                                         /s/
                                    Leonie M. Brinkema
                                    United States District Judge

19